UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

                                                11 CR 111 (NRB)

        -against-

ALWAR POURYAN, ET AL.

                Defendants.
-----------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT ALWAR POURYAN IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT AND FOR OTHER RELIEF

*Attorneys for Defendant Alwar Pouryan*

Lee Ginsberg, Esq.
Freeman, Nooter & Ginsberg
30 Vesey Street, Ste. 100
New York, NY 1007
(212) 6080808

## TABLE OF CONTENTS

I. Introduction ..................................................................................................................1

II. Factual Background ....................................................................................................2

III. Argument....................................................................................................................3

    A.  THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF
JURISDICTION ...............................................................................................3

        1.  The government improperly manufactured jurisdiction in the
United States ........................................................................................4

        2.  U.S. v. Al Kassar is distinguishable from this case...........................7

    B.  SURPLUSAGE MUST BE STRICKEN FROM THE INDICTMENT..............8

    C.  PURSUANT TO FED. R. EVID. 403 AND 404 CERTAIN ITEMS OF
EVIDENCE SHOULD BE DISCLOSED TO THE DEFENSE ONE MONTH IN
ADVANCE OF ANY TRIAL DATE.................................................................9

    D.  THE GOVERNMENT SHALL BE REQUIRED TO PROVIDE BRADY
MATERIAL AS REQUESTED HEREIN..........................................................9

CONCLUSION AND PRAYER FOR RELIEF ..........................................................14

The Defendant, Alwar Pouryan (the "Defendant" or "Pouryan"), by and through his attorneys, files this Memorandum of Law in support of his Motion to Dismiss the Indictment and for Other Relief.

## I. INTRODUCTION

While the Supreme Court of the United States is cautioning against expanding the extraterritorial application of the United States laws[1], U.S. law enforcement agencies are increasingly expanding their activities operating undercover outside of the United States. As in this case, the DEA agents travel across the globe to perform the function of the world's police. American citizens and foreign nationals, subsequently brought to the United States, face harsh criminal charges. The government, in acting in this manner, is empowered by avoiding the consequences of American Constitutional protections in conducting its overseas operations.

The defendant moves for dismissal on the grounds of lack of jurisdiction of this Court based on the legal concept of manufactured jurisdiction. The case has no connection to the United States except for the law enforcement tactics used to create the appearance of some nexus to this country in order to bring the charges in federal court and in this jurisdiction.

---

[1] Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. 2869, 2892 (U.S. 2010) ("The presumption against extraterritoriality can be useful as a theory of congressional purpose, a tool for managing international conflict, a background norm, a tiebreaker....courts should 'assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws.'") (Breyer, J., concurring) (followed in Cedeño v. Intech Group, Inc., 2010 U.S. Dist. LEXIS 88026 (S.D.N.Y. Aug. 24, 2010)).

1

The defendant also seeks additional relief: (2) an Order striking surplusage from the Indictment; (3) an Order requiring 404(b) type evidence at least one month prior to any trial date; (4) an Order requiring the government to provide <u>Brady</u> and related material; (5) an Order permitting the Defendant to join in all motions of his co-defendants that are not inconsistent with the relief requested herein; (6) an Order granting such other relief as this Court deems just and proper.

## II. FACTUAL BACKGROUND

Alwar Pouryan is charged in three counts of a Five Count Indictment with a Narco-Terrorism conspiracy to supply weapons to a terrorist organization, conspiracy to provide material support to a terrorist organization and conspiracy to acquire and transfer anti-aircraft missiles, all in violations of various sections of Title 18 of the United States Code. The essence of the charges is that the defendant participated in meetings with individuals posing as members, associates or procurers of weapons for a terrorist organization, namely the TALIBAN.

The Indictment also alleges that in December 2010 through February 2011 the defendants discussed, procuring and selling to the purported terrorists various types of weapons including missiles and automatic weapons. At no time were any meetings, discussions or other communications held in the United States or in any way geographically connected to the United States.

Jurisdiction is based upon the allegation that the defendants had the above mentioned discussions with people that they believed to be affiliated with the TALIBAN, a terrorist organization whose activity violates the criminal laws of the United States, occurs in and affects foreign commerce, and causes and is designed to cause death and serious bodily injury to nationals of the United States while the nationals are outside the United States. Personal Jurisdiction is based on the defendants having been flown from a place outside the United States to a location in the Southern District of New York, as their first port of entry.

### III. ARGUMENT
### A. THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute ... which is not to be expanded by judicial decree ... It is to be presumed that a cause lies outside this limited jurisdiction ... and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). The basic requirements for a constitutional exercise of jurisdiction are minimal contacts meeting a basic test of fairness. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Here the defendant argues that one of the three distinct theories of manufactured jurisdiction, see United States v. Wallace, 85 F. 3d 1063, 1065-66 (2d Cir. 1996), applies to his case. That is , the unproved-element theory wherein the government unilaterally supplies an essential element of a crime. That essential element is the nexus of the criminal activity to the United States, which in this case was provided solely by the agents of the United States government for the purpose of creating "subject matter jurisdiction."

## 1. THE GOVERNMENT IMPROPERLY MANUFACTURED JURISDICTION IN THE UNITED STATES

The dismissal of charges based on the concept of manufactured jurisdiction was first upheld in United States v. Archer, 486 F.2d 670 (2d Cir. 1973). The Second Circuit held that federal jurisdiction will not lie where the government manufactures jurisdiction for the precise purpose of creating a federal crime. Archer, 485 F.2d at 681. Archer involved a Travel Act charge where federal agents crossed state lines to make telephone calls solely for the purpose of creating federal jurisdiction. Id. at 681. Writing for the Second Circuit, Judge Friendly concluded that when Congress enacted the Travel Act and federalized certain actions as crimes based upon interstate connections, it "did not mean to include cases where the federal officers themselves supplied the interstate element and acted to ensure that an interstate element would be present." Id. at 682 (emphasis added). The Archer Court opined that "[m]anufactured federal jurisdiction is even more offensive in criminal than in civil proceedings." Id.

Similarly, the Fourth Circuit Court in United States v. Coates, 949 F.2d 104, 106 (4th Cir. 1991) held that "federal jurisdiction in criminal prosecutions should not be recognized when patently contrived by means adopted solely for the purpose of creating a federal crime. The Fourth Circuit reversed defendant's conviction concluding that federal jurisdiction will not lie where the sole jurisdictional link rests upon actions taken by the government to create or manufacture a federal offense. Coates, 949 F.2d 104, 106.

Before the decision in United States v. Al Kassar, 660 F.3d 108 (2d Cir. 2011) cases interpreting Archer and Coates focused the question on "whether there is any link between the federal element and a voluntary, affirmative act of the defendant" made to implicate federal jurisdiction. United States v. Wallace, Id. at, 1066 (2d Cir. N.Y. 1996). To uphold the jurisdiction (i) the government had to introduce a federal element into a nonfederal crime, and

4

(ii) the defendant had to take voluntary actions to implicate the federal element. Id. See, also, <u>United States v. LaPorta</u>, 46 F.3d 152, 154, 160 (2d Cir. 1994) (FBI informant asked defendant, suspected of being an arsonist, if he would set fire to the informant's "daughter's car," which was actually a government owned car; conviction for destroying government property by fire upheld and claim of "manufactured jurisdiction" rejected, because "the defendants themselves committed the substantial jurisdictional act of burning the government [car]" (internal quotation marks omitted)); <u>United States v. Gambino</u>, 566 F.2d 414, 41819 (2d Cir. 1977) (after government created phony garbage collection business in the Bronx with ties to interstate commerce, defendants tried to intimidate the business into closing shop; Hobbs Act conviction upheld and claim of "contrived jurisdiction" rejected because "the activities of [the phony business] were necessarily wedded to interstate commerce" and because "no one asked [the defendant] to threaten the FBI agent [posing as the business owner] or to hit him on the head"), cert. denied, 435 U.S. 952 (1978).

In <u>United States v. Lau Tung Lam</u>, 714 F.2d 209, 210 (2d Cir.), cert. denied, 464 U.S. 942 (1983), the Second Circuit Court upheld a conviction for conspiracy to import heroin and rejected the "manufactured jurisdiction" defense, because the defendant "<u>himself committed the substantial jurisdictional act</u> of bringing drugs into the United States". (emphasis added). In <u>Lau Tung Lam</u>, the government agents introduced the defendant to an undercover DEA agent, who offered to buy 510 kilograms of high quality heroin each month for delivery in New York City. Lau Tung Lam agreed to deliver his heroin to the DEA agent in New York. With the assistance of Leriche and cooperating American officials, Lau received a visa to enter the United States. Lau was arrested by federal agents when he and Leriche arrived in New York with the first shipment of heroin.

5

In <u>Wallace</u>, 85 F.3d 1063, 1066 (2d Cir. N.Y. 1996), Wallace was charged with conspiring "to execute a scheme and artifice to defraud a financial institution, to wit, Citibank . . . in that the defendants would and did . . . wrongfully receive payment on the [stolen] checks. Although Citibank was introduced to the scheme only because of the FBI's actions, Wallace did indeed "execute a scheme . . . to defraud . . . Citibank..."'"Unlike the conspirators in Archer, who never agreed to make any interstate phone calls, Wallace and his coconspirators clearly undertook to pressure another to withdraw money from Citibank. The jurisdictional element was therefore an essential part of the conspiratorial agreement." Id. See also <u>United States v. Blatter</u>, 1997 U.S. Dist. LEXIS 8007 (S.D.N.Y. June 6, 1997) (rejecting a manufactured jurisdiction argument where the defendant was charged with conspiring to violate and violating the witness tampering statute. "Even if no basis for federal jurisdiction existed until after the [government introduced the federal element], Blatter's motion must still be denied. Blatter does not dispute that on July 16 he attempted to, and did, purchase documents from the property manager after being told on July 15 that those documents had been subpoenaed by a federal grand jury. Those efforts constitute 'voluntary actions that implicate the federal element... and therefore defeat Blatter's "manufactured jurisdiction" claim." (internal citations omitted).

In the instant matter, there are no facts asserted to show that Alwar Pouryan made "a voluntary and affirmative act" to implicate the "federal element" of the crime. (Nor are we currently aware of such act being taken by a co-conspirator). Accepting the facts alleged in the Indictment as true, the conspiracy arose from the efforts of confidential sources and/or undercover DEA agents posing as individuals affiliated with the TALIBAN to procure weapons from the defendants. The introduction of the TALIBAN as the end purchaser or user of the weapons was done solely to establish the federal element.

6

## 2. U.S. v. Al Kassar is distinguishable from this case

In <u>United States v. Al Kassar</u>, *supra* defendants were charged with (1) conspiracy to kill United States nationals in violation of 18 U.S.C. § 2332(b); (2) conspiracy to kill officers and employees of the United States in violation of 18 U.S.C. § 1117; (3) conspiracy to acquire and use antiaircraft missiles in violation of 18 U.S.C. § 2332g(a)(1); (4) conspiracy to provide material support or resources to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1); and (5) money laundering in violation of 18 U.S.C. § 1956(a)(3).

Al Kassar claimed that the government manufactured jurisdiction when it "(1) first approached defendants and suggested that they become involved in what was originally represented to be an entirely legal arms deal involving other weapons...; (2) executed a "bait and switch" by continuing to misrepresent the nature of the arms deal until after defendants had agreed to the deal...; (3) only then approached defendant Al Kassar about buying surface to air missiles after piquing his interest in an arms deal for other weapons..; (4) even then, produced the enduser certificate that was critical to the deal's success." Id. at 492.

The key difference between Al Kassar and the instant case is that Al Kassar did in fact agree to provide weapons to a foreign terrorist organization <u>and</u> <u>did</u> <u>so</u> <u>because</u> <u>he</u> <u>wanted</u> the weapons to be used in fights with American soldiers, thus, embracing and adopting the federal elements. The facts alleged in the Al Kassar Indictment were consistent with the charges of conspiracy to kill United States nationals and providing material support to a foreign terrorist organization because the defendant's not only agreed to participate in the conspiracy created by agents, they affirmatively furthered the United States connection.

At least one critically important distinction between Al Kassar and the instant matter is that even though the government introduced the federal element into the deal, Al Kassar took "voluntary actions that implicate the federal element[s]" of the charged crimes. He took <u>active</u>

7

steps towards consummating the sale of weapons that specifically involved the federal element, including the receipt of laundered monies from New York.

The differences between the actions taken by the defendants in AL-Kassar and the instant case allow this court to determine that because of the manufactured federal element/jurisdiction, the indictment should be dismissed.

### B. SURPLUSAGE MUST BE STRICKEN FROM THE INDICTMENT

Federal Rule of Criminal Procedure 7(d) provides that "the court on motion of the defendant may strike surplusage from the indictment or information. "A motion to strike surplusage is only granted where it is clear that the alleged surplusage is not relevant to the crime charged and is inflammatory and prejudicial." United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996).

This Indictment is replete with references to the TALIBAN, its history and policies. Beyond the fact that the TALIBAN is a terrorist organization and listed as such in pertinent American law, the balance of the language in the Indictment discussing the TALIBAN is irrelevant to proof of the charges and should be stricken. This irrelevant language would create unfair prejudice and mislead the jury, perhaps more so in the Southern District of New York, as the TALIBAN is frequently equated with AL-QAEDA, the organization responsible for the terrorist attack on the World Trade Center, and thus should be excluded pursuant to Rule 403 of the Federal Rules of Evidence.

## C. DISCLOSURE PURSUANT TO FED. R. EVIDENCE 403 AND 404

Pursuant to the Fifth and Sixth Amendments to the United States Constitution, Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure and Rules 403 and 404(b) of the Federal Rules of Evidence, we request that the government be directed to disclose all evidence of other or similar crimes, wrongs or acts allegedly committed by any defendant upon which the government intends to rely to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. We request that notice of such evidence be provided at least one month before trial so counsel has sufficient time to respond and defend against any allegations.

## D. BRADY MATERIAL

Wholly separate and apart from the above requests are the following demands made pursuant to **Kyles v. Whitely**, 115 S. Ct. 1555 (1995), **Brady v. Maryland**, and its progeny, including, but not limited to:

a. Any and all information within the knowledge of the government, or which should be within its knowledge by the exercise of due diligence which may affect in any way the credibility of any and all government's witnesses.

b. Any and all conversations, recorded or otherwise, wherein defendant's own statements are exculpatory in nature (or any statements) of any defendant or prospective witness.

9

Whether any person to be called as a witness by the government is known, or with due diligence could be known, by the government to:

c. Have been charged with a crime;

d. Have been convicted of crime;

e. Is or has been under psychiatric care or treatment;

f. Is or has been in drug or alcoholic abuse care or treatment. If the answer to any of the aforementioned is in the affirmative, identify the crime or substance and the treatment received with specificity as to time, place and duration.

g. Any and all records and information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not relevant to "rap sheets," of each witness the prosecutor intends to call at trial;

h. Any and all records and information revealing prior or subsequent misconduct, criminal acts or bad acts of any witness the prosecutor intends to call at trial;

I. Any and all information relating to State Court criminal cases in which the government's witnesses have been or are presently involved as defendants or witnesses, including any and all underlying documentation, i.e., docket number, indictment number, offenses charged, affidavits, etc.

j.  Pursuant to the mandates of **United States v. Roviaro**, 353 U.S. 53 (1957) and **United States v. Saa**, 859 F.2d 1067 (2d Cir. 1988), we would request that you make available all witnesses so that we may question them as to whether they will consent to be interviewed by us.

k.  Any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witnesses the government intends to call at trial, or any such consideration or promises expected or hoped for by any such witness at any future time.

l.  Any and all statements - formal and informal, oral or written - by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possibility, likelihood, course or outcome of any government action - state or federal, civil or criminal - or immigration matters against the witness, or anyone related by blood or marriage to the witness. Provide copies of all letters of communication to prosecutors, judges, or other law enforcement agencies; the dates of all oral communications, the specific charges, indictments, etc., which those witnesses have pending.

m.  All proposed agreements with any witness to testify at any trial or before any grand jury including any drafts of such agreements to testify. All documents, reports, memoranda or correspondence, relating to any such proposed agreement to testify.

11

n.  Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness the prosecutor intends to call at trial; criminal prosecution investigations or potential prosecutions pending or which could be brought against any such witness; any probationary, parole deferred prosecution or custodial status of any such witness; and any civil, tax court, court of claims, administrative or other pending or potential legal disputes or transactions involving any such witness; and the state or federal government, or over which the state or federal government has real, apparent or perceived influence.

o.  The existence and the identification of each occasion on which a witness has testified before any court, grand jury, or other tribunal or body, or otherwise officially narrated in relation to the defendants, the investigation or the facts of this case.

p.  Any judicial proceedings in any criminal cases involving (as a witness, unindicted co-conspirator, co-schemer, aider or abettor, or defendant) any person who is a potential prosecution witness at the trial in this action.

q.  Any statements or documents, including, but not limited to, grand jury testimony and federal, state and local tax returns made or executed by and potential prosecution witness at the trial in this action which the prosecution knows, or through reasonable diligence, should have reason to know is false.

r.  The existence of each occasion on which a witness or an informer, accomplice, co-conspirator, co-schemer, or expert has testified before any court, grand jury or other tribunal body.

s.  A copy of all medical and psychiatric reports known to the prosecutor or which can reasonably be known to the prosecutor concerning any witness the prosecutor intends to call at trial which may arguably affect the witness's credibility, ability to perceive or relate to recall events.

t.  Any written or oral statements, whether or not reduced to writing, made by any potential prosecution, witness which in any way contradicts or is inconsistent with or different from other oral or written statements he/she has made, and any statement made by any person, whether a witness or not, which in any way contradicts, or is inconsistent with or different from any statement made by a prosecution witness.

u.  Any requests prepared by the prosecution for permission to grant immunity or leniency for any witness, whether or not such request was granted.

v.  Any information given before the grand jury which exculpates, or tends to exculpate, any defendant, or which may lead to exculpatory evidence.

w.  Any contradictory or inconsistent statements made by or to any law enforcement agents, including prosecutors, by individuals who provided information connected to the crimes charged in this Indictment, whether or not the government intends to call such person at the trial. Specifically, any information that has been provided to the government or its' agents tending to indicating that an individual(s) other than the defendant committed the crimes for which he has been indicted.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated above Defendant Alwar Pouryan requests for the following relief:

(1) An Order dismissing the Indictment for lack of jurisdiction;

(2) An Order striking surplusage from the Indictment;

(3) An Order, pursuant to Fed. R. Evidence 403 and 404 requiring the government to disclose all evidence of other crimes, wrongs or acts intended to be used by the government at trial.;

(4) An Order, pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963), and it progeny, directing the government to produce all information which tends to exculpate the defendant;

(5) An Order permitting the Defendant Alwar Pouryan to join in all motions of his co-defendants that are not inconsistent with th relief requested herein;

(6) An Order granting such other relief as this Court deems just and proper.

Date: May 1, 2012

_____
Lee Ginsberg